UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
EDWARD MCCORMACK,

        Plaintiff,

                                         09CV930 (SJ) (CLP)

        v.

                                        <u>MEMORANDUM</u>
                                        <u>AND ORDER</u>

JOINT INDUSTRY BOARD
OF THE ELECTTRICAL INDUSTRY,
et al.,

        Defendants.
-------------------------------------------------X
A P P E A R A N C E S
AARON DAVID FRISHBERG
116 West 111th Street
New York, NY 10026
By:    Aaron David Frishberg
Attorney for Plaintiff


COHEN WEISS AND SIMON LLP
330 West 42nd Street
New York, NY 10036
By:    Peter D. DeChiara
        Zachary N. Leeds
Attorneys for Defendant


**JOHNSON, Senior District Judge:**

        Plaintiff Edward McCormack ("Plaintiff" or "McCormack") filed the instant

action pursuant to both ERISA, 29 U.S.C. § 1001, <u>et seq.</u>; and the Americans with

Disabilities Act, 42 U.S.C. § 12112, et seq.  He seeks review of Defendant Joint Industry Board of the Electrical Industry's ("Defendant" or the "Board") denial of his 2008 request to apply for a disability pension.  Before me is Defendant's motion for summary judgment.  Based on the submissions of the parties, the oral argument held before me on January 5, 2012, and for the reasons stated below, the motion is granted.

BACKGROUND

Plaintiff is a journeyman electrician who, on July 8, 1998, sustained serious injuries when he fell four stories while attempting to enter his apartment through the window.  At the time of his injury, he was unemployed, having been terminated from his job at Sacco Electric Corporation ("Sacco") in October 1997.  As a member of the Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union"), he was party to a collective bargaining agreement ("CBA") between the Union and various employers.  The CBA established the Board, comprised of an equal number of union and employer Trustees.  The Board's functions include administration of certain employee benefit plans, including a welfare plan that provides hospitalization benefits and pension plan that provides pension benefits. The Pension Trust Fund of the Pension Hospitalization and Benefit Plan of the Electrical Industry (the "Fund") is governed by a plan document (the

2

"Plan") which gives the Board full discretionary authority to determine eligibility for benefits and to construe the Plan's terms and provisions.

On February 3, 2008, Plaintiff wrote to the Board requesting a disability pension application that he wished to have "processed retroactively to 1998." Plaintiff claimed then, and claims now, that while he was hospitalized after his July 1998 fall, he was falsely told that he was "ineligible for benefits," a statement that led him to believe that he would not qualify for a disability pension. At some point between his accident and his inquiry, Plaintiff alleges that he was again told he was ineligible and only learned in 2007 of his alleged eligibility. Plaintiff argues that these circumstances, coupled with the head trauma from which he suffered, demand that his application be deemed filed at the time of his accident, as a reasonable accommodation of his disability. However, the Plan denied Plaintiff's request in a letter dated May 6, 2008 (the "May 6 Letter").

More specifically, the letter and Plan outline several prerequisites to recovery that are relevant to the instant dispute: (1) that the participant be permanently incapacitated such that continued work in the electrical industry is no longer possible; (2) that the participant has been employed or available for employment for at least ten years prior to the application; and (3) that the application be submitted within two years of being disabled. (See Ex. D to Collack Decl.) The parties make no mention of the first factor and as a result, I will assume arguendo that Plaintiff is sufficiently incapacitated to satisfy this requirement. The second two factors are in

3

dispute and are inextricably intertwined: to recover, Plaintiff must have been employed ten years prior to the application, and have submitted the application within two years of his disability.

Plaintiff argues that his application should be considered filed in 1998 because of additional misfortunes befalling him.  Specifically, he alleges that various union employees gave him misinformation about his eligibility and, combined with the injuries to his brain, he was further prevented, discouraged and/or incapable of pursuing a disability pension until 2008.  While Plaintiff claims that these post-injury events are the reasons for his ineligibility, an examination of his pre-injury communications with the union suggests otherwise.

*Plaintiff's Termination from Sacco*

On October 21, 1997, Plaintiff was terminated from Sacco.  Sacco cited his excessive absenteeism for its decision:  Plaintiff began working for Sacco on September 7, 1997, and by October 21, 1997, was absent from work 11 times.  On November 18, 1997, Plaintiff acknowledged by letter that his absences were due to personal circumstances.  The Board claims to have sent Plaintiff a postcard on January 20, 1998, which Plaintiff denies receiving.  The Board also claims to have sent Plaintiff a letter on May 20, 1998 (the "May 20 Letter").  They May 20 Letter purports to inform Plaintiff that the Board's records indicate that he had not been

4

available for work and warns him to notify the Board "immediately" if he wants to avoid being officially classified as "unavailable."   Plaintiff denies receiving the May 20 Letter, however, he seems to rely on it in order to demonstrate that he was not out of touch.   For example, in response to Defendant's 56.1 Statement, Plaintiff makes reference to the handwritten comments on the May 20 Letter.   Those comments, written by a Plan employee, state:

> Sent post cd on 1/20/98—member has no phone.  On 2/19/98—he called—he said he never rec'd postcard but was unavail until 2/23/98—member was told to write ltr.  None rec'd. do not sent out until its [*sic*] rec'd.

Plaintiff did not write the letter as allegedly instructed and did not otherwise respond to the May 20 Letter.   Indeed, in his affidavit, Plaintiff states that

> I left the job at Sacco before the work was completed, and <u>did not seek work</u> in the months that followed . . . because I was having a drinking problem, and I might not have been able to do my work as a journeyman electrician in a way that would leave behind safe wiring.

(Pl. Aff. ¶ 3 (emphasis added.).)   Therefore, the parties agree that, at least for "the months that followed" Plaintiff's termination, he did not seek work.

On July 7, 1998, Plaintiff suffered severe injuries as a result of his fall, including a partially detached arm and broken back.   Plaintiff claims that, while hospitalized, he received misinformation about his eligibility for unspecified "benefits."   Specifically, he claims that "a social worker at Jacobi [Hospital] who contacted the union was told" that Plaintiff is not eligible for "benefits."   However,

because Plaintiff admits not seeking work even prior to his accident, this alleged misinformation is of no consequence.

Moreover, Plaintiff wrote to the Board on April 29, 1999, stating:

Following the loss of this job I was involved in numerous police procedures; culminating in my being evicted from my home and than [*sic*] breaking my back in a four story fall[.]  [D]ue to these circumstances I was unavailable for work.  However I am healthy now and wish only to return to work.

(Collazo Decl. Ex. L (emphasis added).)  Plaintiff attempted to return to work for four days in 1999, but was unable to continue.


*Plaintiff's Appeal to the Board*

Plaintiff appealed the Board's decision denying him the opportunity to file for a disability pension, and at an August 27, 2008 committee meeting, the Board reviewed his case.  The Board found, inter alia, that "Mr. McCormack [was] listed as being unavailable for employment for personal business from January 1998 through May 1998."  In denying the appeal, it also made note of the fact that the Pension Department had no record of a written inquiry from Mc Cormack until 2008.

Plaintiff filed this action on January 14, 2009, seeking declaratory relief finding that the denial of benefits was arbitrary and capricious; an injunction requiring Defendant to deem Plaintiff qualified for a disability pension; an injunction requiring payment of benefits for the period of July 1998 to present; and judgment in

favor of Plaintiff on his claim that the Board's refusal to accommodate him by treating the application as filed in 1998 constitutes discrimination based on his disability.  Defendants move for summary judgment.


DISCUSSION

*Summary Judgment Standard*

It is well-settled that a party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  Material facts are those that may affect the outcome of the case.  See Anderson, 477 U.S. at 248.  An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party.  Id.

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248).  If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied.  See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

7

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial."   Fed. R. Civ. P. 56(e).   The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading."   Anderson, 477 U.S. at 256.   Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment.   Id. at 247-48.   Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor.   Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

In this district, Local Rule 56.1 assists in identifying the existence of any triable issues by requiring the moving party to submit a Statement of Material Facts that it contends are not in dispute. The non-moving party then must, pursuant to Local Rule 56.1(b), set forth the material facts that it believes are in dispute and warrant a trial.  In this case, each of the parties has submitted a Statement of Material Facts pursuant to Local Rule 56.1. However, Plaintiff's Rule 56.1(b) Statement of Material Facts fails to controvert Defendant's Rule 56.1 Statement in the manner prescribed by the Rule. Specifically, while Plaintiff's statement contains numbered paragraphs that purportedly respond to each offered by the Board, the responses are

often in the form of argument.   (See, e.g., ¶19 (disputing that McCormack was unavailable for work but not disputing Defendant's assertion that McCormack wrote same in his April 29, 1999 letter); ¶23 (purportedly disputing the Board's characterization of Plaintiff's letter but in fact only rehashing the unquoted portions of the letter).)   Additionally, Plaintiff's statement is deficient in that he does not separately list in additional paragraphs the facts he claims are in dispute, as required by Local Rule 56.1(b).   Plaintiff's statement also fails to comply with Local Rule 56.1(d), which requires each statement or counterstatement to be accompanied by a citation to evidence which would be admissible and which supports the statement. While most statements contain a citation to the record, some citations, when examined, inadequately support the view advanced by Plaintiff.   Although it is not required to do so, this Court can attempt to wade through Plaintiff's Rule 56.1(b) Statement in an effort to do what Plaintiff should have done: determine which facts set forth by Defendant in its Rule 56.1(a) statement are controverted by Plaintiff. See Bagdasarian v. O'Neill, 00 CIV 0258, 2002 WL 1628722, at *2 (W.D.N.Y. July 17, 2002); see also Holtz v. Rockefeller & Co., 258 F.3d 62, 73-74 (2d Cir.2001) (finding that "a district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules" and declining to admit those portions of defendant's Local Rule 56.1 statement that, although not contested by plaintiff, were unsupported by deposition testimony).   Therefore, those facts that Plaintiff does

not properly dispute that are supported by the record will be deemed admitted for the purpose of this motion.

*Standard of Review in ERISA Actions*

Because the Plan confers upon the board the discretionary authority to determine eligibility, the administrator's ultimate conclusion cannot be disturbed unless it is "arbitrary and capricious." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir 1995); see also Pepe v. Newspaper and Mail Deliveries'-Publishers' Pension Fund, 559 F.3d 140, 146 (2d Cir. 2009) ("Since the terms of the Plan grant the [administrator] discretionary authority to interpret the Plan, the standard governing the district court's review, and accordingly our review here, is the arbitrary-and-capricious standard."); Kruk v. Metropolitan Life Insurance Co., 3:07–CV–01533, 2009 WL 1481543, *2 n. 1 (D. Conn. May 26, 2009) ("The term 'arbitrary and capricious' is used interchangeably with the phrase 'abuse of discretion,' and either describes the deferential standard applied when an ERISA plan reserves discretion.") (internal citations omitted)). Given these limitations, Plaintiff's contentions need not detain us much further.

While the parties quibble over which versions of the Plan and which amendments thereto can be fairly applied to Plaintiff, I assume arguendo that the June 11, 1998 Plan description annexed to the Collock Declaration at Exhibit D applies in this case. The prerequisites to recovery stated in this plan that are relevant

10

to this dispute are all factors considered by the Board in denying Plaintiff's appeal and are all factors contained in all subsequent plans.  Therefore, Plaintiff's request to treat his application as filed in 1998 is moot, as such a modification would not have affected his eligibility given his inability to establish that he was continuously available for work in the ten years prior to 1998.  For the same reasons, Plaintiff's argument that any plan subsequent to his accident stripped him of vested rights is without merit, for the fact remains that even on the date of his injuries, he was not qualified to receive a disability pension.

  As stated, _supra_, at all relevant times from Plaintiff's 1997 employment with Sacco through his 1998 injury, he was required to be continually employed or available for work in order to qualify; he was not.  The Board considered this factor in denying his appeal, and I find that its decision was neither arbitrary nor capricious.  That Plaintiff may have been misinformed or too incapacitated to proceed with the application in a timely manner does not change the fact that, were he properly informed and capable, his application would have been denied for failure to be employable in the ten years immediately prior.  Even if I understood the Board's denial to be arbitrary and capricious and granted Plaintiff a 10 year extension as a "reasonable accommodation," I could not save his case.  Therefore, I find that the Board's decision to deny his appeal-- given its unsuccessful attempts at contacting him during a period in which he was supposed to be available for work, along with

his own written admissions that personal problems pre-dating the accident rendered him unavailable for work-- must stand.

I have considered Plaintiff's remaining arguments and find them to be without merit.

Defendant's motion for summary judgment is granted.  The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: January 30, 2012                              /s
      Brooklyn, New York                    Sterling Johnson, Jr., U.S.D.J.